IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH LEE GLOSSON,                         No. CIV S-11-1743-CMK-P

        Plaintiff,

  vs.                                                      ORDER

TIM V. VIRGA, et al.,

        Defendants.

_____/

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: Virga, Baughman, Shannon, Clark, Engellenner, Stinson, Leatham, Polich, Brannen, Long, Wright, and Foston.  Plaintiff alleges that, on April 10, 2010, he was instructed by defendant Stinson to pack up his belongings because he was going to be moved to a different housing unit.  Plaintiff told Stinson that he was "not interested in moving" because his "standing" in his current unit was "exemplary."  Stinson then told plaintiff that, if he didn't agree to the move, he would be fired from his current job assignment.  Stinson denied plaintiff's request to speak with the watch sergeant about the issue. Plaintiff adds that he later learned that the move had been approved by defendant Engellenner.

Next, plaintiff claims that he had been "medically assigned" a lower bunk and that upon arrival at the new housing unit, plaintiff produced his lower bunk "chrono" to defendants Leatham and Polich.  It appears that, notwithstanding his "chrono," plaintiff was assigned to an upper bunk in his new cell.  Plaintiff claims that, on April 11, 2010, after sleeping the night in the upper bunk, he was climbing down and "lost his balance and landed on the cell floor, and was rendered unconscious."  Plaintiff's cell mate then yelled "man down," whereupon plaintiff was removed from his cell by stretcher and taken to the medical clinic for evaluation where he was examined by defendant Long.  According to plaintiff, defendant Long diagnosed plaintiff as suffering from a contusion to the back of the head "and injuries that would require further

1  examination." Nonetheless, plaintiff claims that defendant Long was deliberately indifferent and
2  that he was sent back to his cell before any further evaluation was performed. Plaintiff states that
3  he was later moved to a lower bunk.
4       Plaintiff claims that these allegations give rise to § 1983 claims based on
5  deliberate indifference to his medical needs, retaliation, and denial of due process.

## II.  DISCUSSION

The court finds that plaintiff's complaint suffers from a number of defects which are discussed below.

### A.   Causal Link

Of the named defendants, there are no specific allegations as to defendants Virga or Shannon. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

///
///
///
///

### B. Supervisory Defendants

Plaintiff names Virga and Baughman, who as the prison warden and associate warden, respectively, are supervisory defendants. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

Here, plaintiff does not allege facts showing any personal involvement on the part of Virga. As to Baughman, the only personal action alleged is that he addressed plaintiff's grievance at the second level of review. For the reasons discussed below, this is insufficient to maintain a claim under § 1983. The supervisory defendants should be dismissed.

### C. Prison Grievance Process

It appears that plaintiff has named a number of individuals as defendants based solely on their processing of plaintiff's inmate grievances. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding

4

that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Plaintiff, however, has not alleged any such interference and it is clear that all his grievances were processed.

**D.      Substantive Claims**

Plaintiff states that the facts alleged in the complaint give rise to § 1983 claims for deliberate indifference to his medical needs, retaliation, and denial of due process. The court does not agree.

1.      Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

1  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.
2  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with
3  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,
4  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only
5  when two requirements are met: (1) objectively, the official's act or omission must be so serious
6  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)
7  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of
8  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison
9  official must have a "sufficiently culpable mind."  See id.  A difference of opinion, however,
10 between the prisoner and medical providers concerning the appropriate course of treatment does
11 not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th
12 Cir. 1996).

13         Here, plaintiff claims that defendant Long was deliberately indifferent to his
14 medical needs.  This contention, however, is belied by plaintiff's statement that he was in fact
15 treated by Long after his fall.  Thus, defendant Long cannot be said to have been indifferent,
16 deliberately or otherwise, to plaintiff's medical needs.  To the extent plaintiff asserts that he
17 should have been examined further immediately instead of first being returned to his cell, such a
18 claim amounts to a difference of medical opinion with defendant Long, who believed that
19 plaintiff did not require immediate evaluation.

20         2.      Retaliation

21         In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must
22 establish that he was retaliated against for exercising a constitutional right, and that the
23 retaliatory action was not related to a legitimate penological purpose, such as preserving
24 institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).
25 In meeting this standard, the prisoner must demonstrate a specific link between the alleged
26 retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, it appears that plaintiff believes the threats of adverse action amount to actionable retaliation. However, based on the facts alleged, it is clear that adverse action was only threatened, not actually taken because plaintiff ultimately complied with the order to move to a different housing unit. Furthermore, the facts alleged do not indicate that plaintiff was engaging in any protected activity when the threats of adverse action were made. Plaintiff's initial refusal to move to a different housing unit does not constitute protected activity and prison officials rightly warned plaintiff about the consequences of refusing their orders.

### 3. Due Process

The court simply cannot glean any factual allegations to support a claim of denial of either substantive or procedural due process. To the extent plaintiff is asserting that defendants' denials of his inmate grievances violated his due process rights, plaintiff has not stated any claim relating to the grievance process as more fully discussed above.

/ / /
/ / /
/ / /
/ / /
/ / /

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff shall show cause in writing, within 30 days of the date of this order, why this action should not be dismissed for failure to state a claim.  Plaintiff is warned that failure to respond to this order may result in dismissal of the action for the reasons outlined above, as well as for failure to prosecute and comply with court rules and orders.  See Local Rule 110.

IT IS SO ORDERED.

DATED: August 10, 2011

　　　　　　　　　　　　　　　　　　　/s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE